# 22-1000-bk

In the
## United States Court of Appeals
### For the Second Circuit

KIMBERLY BRUCE, Debtor and Plaintiff on behalf of herself and all others
similarly situated, AKA Kimberly A. Bruce, AKA Kimberly Antrell Bruce,

*Plaintiff-Appellee,*

– v. –

CITIGROUP INC. and CITIBANK, N.A.,

*Defendants-Appellants,*

U.S. TRUSTEE,

*Trustee.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (DRAIN, J.)

## BRIEF FOR PLAINTIFF-APPELLEE

GEORGE F. CARPINELLO
ADAM R. SHAW
JENNA C. SMITH
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, New York 12207
(518) 434-0600

CHARLES JUNTIKKA
CHARLES JUNTIKKA &
ASSOCIATES LLP
247 West 30th Street, Floor 12
New York, NY 10001
(212) 315-3755

*Counsel for Plaintiff-Appellee*

November 16, 2022

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................................................iv

JURISDICTIONAL STATEMENT ...............................................................1

PRELIMINARY STATEMENT ....................................................................2

ISSUES PRESENTED ...................................................................................5

STATEMENT OF THE CASE .......................................................................6

A.      Factual Background.............................................................................6

B.      Procedural History.............................................................................10

STANDARD OF REVIEW...........................................................................11

ARGUMENT.................................................................................................12

I.       THE COMPLAINT STATES A CAUSE OF ACTION FOR VIOLATION OF THE DISCHARGE INJUNCTION OF § 524 AND VIOLATION OF THE INDIVIDUAL DISCHARGE ORDERS. .....12

II.     CITI HAS NO DEFENSE UNDER *TAGGART*. ...............................23

III.    THE BANKRUPTCY COURT HAS SUBJECT MATTER JURISDICTION TO ADJUDICATE A NATIONWIDE CLASS IN THIS PROCEEDING.........................................................................25

         1.      This Court has Subject Matter Jurisdiction Over a National Class. .........................................................................28

         2.      The Supreme Court Mandates that Courts Exercise Their Subject Matter Jurisdiction. ......................................31

         3.      There Is No "Fundamental Equitable Principle" That Prevents The Bankruptcy Court from Exercising Subject Matter Jurisdiction Over a National Class.............................32

ii

4.  It Is Appropriate for the Bankruptcy Court to Exercise Nationwide Jurisdiction Because of the Uniformity of the Discharge Order and the Application of § 524. ........................35

5.  This Court's Decision in *Anderson* Does Not Support Citi's Position ....................................................................................42

6.  This Court Should Not Follow the Fifth Circuit's Dicta in *Crocker* ....................................................................................44

7.  This Court Should Not Follow the Dicta of the Court in *Belton*. ....................................................................................49

8.  *Taggart* Does Not Prohibit Nationwide Jurisdiction In This Case. ..................................................................................52

CONCLUSION ...........................................................................53

CERTIFICATE OF SERVICE .....................................................55

CERTIFICATE OF COMPLIANCE ............................................56

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*A&B Alt. Mktg. Inc. v. Int. Quality Fruit Inc.*,
   35 F.4th 913 (2d Cir. 2022) ...................................................................12

*Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*),
   627 B.R. 6 (Bankr. E.D.N.Y. 2021)........................................... *passim*

*Alderwoods Group, Inc. v. Garcia*,
   682 F.3d 958 (11th Cir. 2012) ...................................................... 46, 47

*Anderson v. Credit One Bank* (*In re Anderson*),
   641 B.R. 1 (Bankr. S.D.N.Y. 2022)........................................... *passim*

*Anderson v. Credit One, N.A.* (*In re Anderson*),
   884 F.3d 382 (2d Cir. 2018)......................................... 11, 42, 43, 44

*Anderson v. Credit One, N.A.* (*In re Anderson*),
   139 S. Ct. 144 (2018) ...........................................................................11

*Baker v. General Motors Corp.*,
   522 U.S. 222 (1998) ...................................................................... 26, 30

*Bank United v. Manley*,
   273 B.R. 229 (N.D. Ala. 2001) ..........................................................30

*Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*),
   Nos. 15 CV 1934, 15 CV 3311, 2015 WL 6163083 (S.D.N.Y.
   Oct. 14, 2015)...................................................................................11

*Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*),
   Nos. 15 CV 1934, 15 CV 3311, 2019 WL 1017293 (S.D.N.Y.
   Mar. 4, 2019).....................................................................................11

*Belton v. GE Capital Retail Bank* (*In re Belton*),
   961 F.3d 612 (2d Cir. 2020)....................................................... *passim*

*Bessette v. Avco Financial Services, Inc.*,
   230 F.3d 439 (1st. Cir. 2000) .................................................... *passim*

iv

*Bruno v. First USA Bank, N.A.* (*In re Bruno*),
   356 B.R. 89 (Bankr. W.D.N.Y. 2006) ..................................................17

*Caldwell v. Redstone Federal Credit Union*,
   No. 2:15-cv-01923, 2018 WL 3518466 (Bankr. N.D. Ala. July 20, 2018).........17

*Cano v. GMAC Mortgage Corp.* (*In re Cano*),
   410 B.R. 506 (Bankr. S.D. Tex. 2009) ............................................. 27, 30, 49, 52

*Carnegie v. Nationstar Mortg., LLC* (*In re Carnegie*),
   621 B.R. 392 (Bankr. M.D. N.C. 2020)............................................................25

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...........................................................................................35

*Cohens v. State of Virginia*,
   19 U.S. 264 (1821)...........................................................................................31

*Colorado River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976).........................................................................................31

*Cox v. Zale Delaware, Inc.*,
   239 F.3d 910 (7th Cir. 2001) ...........................................................................49

*Crocker v. Navient Solutions, LLC* (*In re Crocker*),
   941 F.3d 206 (5th Cir. 2019) ..................................................................*passim*

*D'Addino v. Dulles*,
   136 F. Supp. 417 (E.D.N.Y. 1954) ..................................................................41

*DiBattista v. Selene Fin. LP* (*In re DiBattista*),
   615 B.R. 31 (S.D.N.Y. 2020)..................................................................... 13, 24

*Ex parte Bradley*,
   74 U.S. 364 (1868)..................................................................................... 33, 34

*Garfield v. Ocwen Loan Servicing, LLC*,
   811 F.3d 86 (2d Cir. 2016)...............................................................................51

*Goe v. Zucker*,
   43 F.4th 19 (2d Cir. 2022) ...............................................................................11

*Golden v. Discover Bank* (*In re Golden*),
    630 B.R. 896 (Bankr. E.D.N.Y. 2021)........................................................... 27, 30

*Golden v. JP Morgan Chase* (*In re Golden*),
    596 B.R. 239 (Bankr. E.D.N.Y. 2019)................................................................51

*Grey v. Petroseed Inc.*,
    985 F. Supp. 625 (D. S.C. 1996)..........................................................................30

*Haynes v. Chase Bank USA, N.A.* (*In re Haynes*),
    No. 13-08370, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014).......... *passim*

*Ho v. JP Morgan Chase* (*In re Ho*),
    624 B.R. 748 (Bankr. E.D.N.Y. 2021)................................................................16

*Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*),
    No. 17-1085, 2022 WL 10707498 (Bankr. E.D.N.Y Oct. 17, 2022) ........... 26, 27

*In re Beck*,
    283 B.R. 163 (Bankr. E.D. Pa. 2002) .................................................................39

*In re Brizinova*,
    565 B.R. 488 (Bankr. E.D.N.Y. 2017)........................................................... 37, 38

*In re Cline*,
    282 B.R. 686 (W.D. Wash. 2002)........................................................................39

*In re Debs*,
    158 U.S. 564 (1895)...................................................................................... 32, 34

*In re Harris*,
    280 B.R. 876 (Bankr. S.D. Ala. 2001)................................................................30

*In re Kalikow*,
    602 F.3d 82 (2d Cir. 2010)........................................................................... 22, 27

*In re Krause*,
    414 B.R. 243 (S.D. Ohio 2009) ..........................................................................30

*In re Nassoko*,
    405 B.R. 515 (Bankr. S.D.N.Y. 2009).................................................................12

*In re Noletto*,
    244 B.R. 845 (S.D. Ala. 2000)..................................................................30

*In re Patrick*,
    344 B.R. 56 (Bankr. M.D. Pa. 2005) ......................................................30

*In re Sheffield*,
    281 B.R. 24 (Bankr. S.D. Ala. 2000).....................................................30

*In re Sims*,
    278 B.R. 457 (Bankr. E.D. Tenn. 2002) ................................................30

*In re Yates*,
    4 Johns. 317 (S. Ch. N.Y. 1809) ...........................................................33

*Int'l Union v. Bagwell*,
    512 U.S. 821 (1994)................................................................................33

*Irby v. Fashion Bug* (*In re Irby*),
    337 B.R. 293 (Bankr. N.D. Ohio 2005) ................................................17

*Laboy v. First Bank P.R.* (*In re Laboy*),
    2010 Bankr. LEXIS 345 (Bankr. D. P.R. Feb 2, 2010) ........................13

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)................................................................................31

*Lohmeyer v. Alvin's Jewelers* (*In re Lohmeyer*),
    365 B.R. 746 (N.D. Ohio 2007) ............................................................13

*Marrama v. Citizens Bank of Mass.*,
    549 U.S. 365 (2007)................................................................................12

*McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*),
    388 B.R. 474 (Bankr. E.D.N.Y. 2007)..................................................12

*Minech v. Clearview Fed. Credit Union* (*In re Minech*),
    632 B.R. 274 (Bankr. W.D. Pa. 2021) ..................................................13

*Mogg v. Midwest Collection Services* (*In re Mogg*),
    No. 07-3076, 2007 WL 2608501 (S.D. Ill. Sept. 5, 2007) ...................17

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ........................................................................32

*Rojas v. Citicorp Trust Bank FSB* (*In re Rojas*),
    No. 09-07003, 2009 WL 2496807 (Bankr. S.D. Tex.
    August 12, 2009) ................................................... 27, 29, 36

*Russell v. Chase Bank, USA, N.A.* (*In re Russell*),
    378 B.R. 735 (Bankr. E.D.N.Y. 2007) ........................................ 13, 17

*Smith v. New York*,
    No. 12-cv-4851, 2014 WL 6783194 (E.D.N.Y. Dec. 2, 2014) ................... 40, 41

*Smith v. Woosley*,
    399 F.3d 428 (2d Cir. 2005) .................................................41

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019) ............................................... *passim*

*Torres Ramos v. Cooperativa De Ahorra* (*In re Torres Ramos*),
    No. 19-00456, 2021 WL 4465547 (D. P.R. Sept. 29, 2021) ...............13

*Torres v. Chase Bank USA, N.A.* (*In re Torres*),
    367 B.R. 478 (Bankr. S.D.N.Y. 2007).................................13

*Vick v. NCO Fin. Systems, Inc.*,
    No. 2:09-CV-114, 2010 WL 1330637 (E.D. Tex. March 15, 2010) ........... 27, 36

*Vick v. NCO Fin. Systems, Inc.*,
    No. 2:09-CV-114, 2010 WL 1328830 (E.D. Tex. March 30, 2010) ........... 27, 36

*Vogt v. Dynamic Recovery Resources*,
    257 B.R. 65 (Bankr. D. Colo. 2000) ...............................17

*Walls v. Wells Fargo Bank, N.A.*,
    276 F.3d 502 (9th Cir. 2002) ..................................... 48, 49

*Walls v. Wells Fargo Bank, NA.*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001).......................... 38, 39

*Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*),
    609 F.3d 748 (5th Cir. 2010) ..............................47

*Yghobi v. Robinson*,
  145 F. App'x. 697 (2d Cir. 2005) ........................................................51

**Statutes**

11 U.S.C. § 105 ............................................................... *passim*

11 U.S.C. § 524 ............................................................... *passim*

11 U.S.C. § 362 ........................................................................38

11 U.S.C. § 727 ........................................................................29

15 U.S.C. § 1681s-2(a)(2) ........................................................19

28 U.S.C. § 157 ........................................................................29

28 U.S.C. § 158(d)(2) .................................................................1

28 U.S.C. § 1334 ........................................................................1

28 U.S.C. § 1334(b) ....................................................... 29, 30, 47

28 U.S.C. § 1334(e) ..................................................................29

28 U.S.C. § 1451 ......................................................................35

28 U.S.C. § 2283 ......................................................................42

Const., Art. I, Sec. 8 ...............................................................40

**Rules**

Fed. R. Bankr. Pro. 4004(f) ........................................... 45, 46, 49

Fed. R. Bankr. Pro. 7023 .............................................. *passim*

Fed. R. Bankr. Pro. 9009 ..........................................................37

Fed. R. Civ. Pro. 1 .................................................................40

Fed. R. Civ. P. 12(b)(6) ............................................... 11, 25, 26

Fed. R. Civ. P. 23 ......................................................... 30, 36

Fed. R. Civ. P. 60(b) ............................................................................41

Fed. R. Civ. P. 65 ...............................................................................38

Official Bankruptcy Form B 318 ........................................................37

**Regulations**

12 C.F.R. § 1022.43(p)(1)(iv) ............................................................20

**Other Authorities**

*Class Actions for Post-Petition Wrongs: National Relief Against National
Creditors*,
Am. Bankr. Inst. J. March 2003 ..........................................................38

*Closing Consumer Bankruptcy's Enforcement Gap*,
69 BAYLOR L. REV. 479- (2017)......................................................40

*The Debtor Class*,
88 Tul. L. Rev. 21 (2013) ...................................................................38

## <u>JURISDICTIONAL STATEMENT</u>

The United States Bankruptcy Court for the Southern District of New York had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1334 and 158(d)(2).

## <u>PRELIMINARY STATEMENT</u>

Defendants Citigroup and Citibank, N.A.'s (hereinafter "Citi") appeal takes this Court on another needless interlocutory journey. This case is before the Court on review of the denial of Citi's motion to dismiss and motion to strike allegations from the complaint. Because of that procedural posture, the well-pleaded allegations of the complaint must be accepted as true, and the plausibly alleged claims must survive. Citi's brief argues this interlocutory appeal as if it were a post-trial appeal where the facts were fully adjudicated in Citi's favor. It is not. The issue before this Court is whether Plaintiff-Appellee Kimberly Bruce's (hereinafter "Plaintiff" or "Ms. Bruce") allegations, taken as true, plausibly support her claims and whether the class allegations should be maintained so that they can be properly considered as part of any later Rule 23 motion and analysis.

Citi's appeal fails for several reasons. First, Citi's argument that the Complaint fails to state a claim because it merely alleges "inaction" on Citi's part misapprehends the allegations and the claims asserted. The Complaint does not seek to hold Citi liable for inaction. Rather, it alleges that Citi adopted a conscious and deliberate policy of refusing to correct tradelines on credit reports to reflect that the underlying debts had been discharged in bankruptcy *for the bad faith purpose* of collecting on discharged debts. Citi continued to report debts as delinquent even though it knew the debts had been discharged in bankruptcy. Citi knows that the

erroneous credit reporting will induce former debtors to make payments on discharged debts because a "charge off" or "past due" notation will prevent them from obtaining credit, renting an apartment, or, often, obtaining a job. When asked to remove the charge off, Citi refuses. The only way to remove the charge off is to pay off the discharged debt. The overwhelming body of case law has long held that such conduct is violative of the discharge injunction contained in 11 U.S.C. § 524 and the standard discharge order.

Second, Citi's argument that *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) and its "fair ground of doubt" standard is dispositive on this appeal is wrong. The "fair ground of doubt" standard does not even apply because Plaintiff alleges Citi acted with subjective bad faith, which *Taggart* expressly acknowledges is a basis for holding a party in contempt. Even if the "fair ground of doubt" standard applied, Plaintiff properly alleged that there is no reasonable doubt that Citi violated § 524, because the case law is overwhelming and longstanding and there is no case law to the contrary.

Third, Citi's argument that the district court erred in refusing to strike the class allegations, even before a motion to certify the class had been made, should be rejected. Significantly, Citi concedes that the district court has subject matter jurisdiction to entertain such a class, and that Rule 23 applies to bankruptcy courts by virtue of Federal Rule of Bankruptcy Procedure 7023. Yet, Citi argues that the

Court's exercise of such jurisdiction violates some "fundamental equitable principle" that one court cannot enforce, through contempt, another court's injunction.  There are several flaws with Citi's argument.  First, given the fact that the district court has subject matter jurisdiction, and given that the Supreme Court has admonished lower courts that they must exercise that jurisdiction absent limited special circumstances not raised here, it is clear that there is no impediment to the Court's exercise of jurisdiction over a national class.  Rather, it is an issue that lies within the Court's sound direction.

Fourth, although the Supreme Court has said that "generally" the court that issues an order should be the court to enforce it, that general prudential rule does not deprive other courts of the power to entertain a class action where one defendant adopts a policy that affects an entire class.  It is a discretionary issue of comity among coordinate courts, it is not the absolute bar that Citi claims it is.  That is especially true in a case such as this, which involves a *statutory* injunction embodied in § 524, and an alleged violation of a standard discharge order that is identical and entered in every single individual bankruptcy case.  This is not a case where an injunction is carefully crafted by a court, nor one that draws on the court's inherent power to control its own proceedings.  This is a case where the defendants' policy affects the entire class in the same way and the statutory injunction operates in exactly the same way as to each class member.  There is no rational reason why ninety-four separate

judicial districts in thousands of individual cases should decide the exact same issue involving the same facts and the same law rather than adjudicating the common factual legal questions in one national class.

Finally, even if Citi were correct that the court could not hold Citi in contempt for violating other courts' injunctions, the district court has jurisdiction to enter both a declaratory judgment that Citi's actions violate § 524 and the standard discharge order, and an order requiring restitution of funds collected by Citi through its illegal conduct. Those specific and separate claims are asserted in the Complaint. Nothing Citi argues would prevent the Court from exercising nationwide jurisdiction to provide those forms of relief.

## ISSUES PRESENTED

1.  Did the bankruptcy court properly deny the motion to dismiss the Complaint, which alleges that Defendants adopted a policy of refusing to correct tradelines on credit reports for the purpose of collecting on discharged debts?

2.  Did the bankruptcy court properly hold that *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2009) did not apply where the Complaint alleges that Defendants had the bad faith, subjective intent to collect on discharged debts and where the case law holding such conduct to be illegal is well established?

3.  Did the bankruptcy court properly deny Defendants' motion to strike the national class allegations where the bankruptcy court has subject matter

jurisdiction over such a class and where the Complaint seeks not only to hold Defendants in contempt but also seeks a declaratory judgment that Defendants violated the statutory discharge injunction and restitution of funds paid after discharge in bankruptcy?

## <u>STATEMENT OF THE CASE</u>

### A.    Factual Background

In April 2007, Ms. Bruce incurred a debt with Citi. A62 ¶ 14. In December 2009, Citi reported to the credit reporting agencies that the debt was delinquent, had a balance of $1124 and was "charged off." A62 ¶¶ 15-16. Ms. Bruce commenced this case in January 2013, by filing a voluntary petition for relief under Chapter 7 of Title 11 of the U.S. Bankruptcy Code. A62 ¶ 17. In May 2013, the bankruptcy court entered an order discharging her debts, including the debts owed to Citi and Citi was notified of the discharge days later. A62 ¶¶ 18-19

By September 2013, Ms. Bruce's Equifax credit report still reported the debt as "charged off" and showed no indication that the account had been included in bankruptcy. A62 ¶ 20. In December 2013, she contacted Citi through her attorney and advised Citi that the account was discharged in bankruptcy but was still reported as "charged off." A63 ¶ 22. Ms. Bruce requested that Citi remove the charge off from her credit report, but Citi refused. A63 ¶¶ 24-25.

Apparently, Plaintiff's account had previously been transferred to Midland Funding, LLC ("Midland") in June 2011 pursuant to a Forward Flow Agreement ("Agreement"). A63 ¶¶ 28-29. Under the Agreement, Citi agreed to act as agent for Midland in the collection of debt. A63 ¶ 30. As agent, Citi agreed to send to Midland all sums collected by Citi on debts that were previously sold to Midland.[1] *Id.* In addition to acting as Midland's agent, Citi has a direct financial interest in the collection of debts such as Plaintiff's, because third-party purchasers are willing to pay more for Citi's discharged debt knowing that Citi will not update its credit reporting. A64 ¶ 31. Midland is also required to pay Citi for information about the sold debts, including Plaintiff's debt, which Midland uses to help it collect the debts. A64 ¶ 32.

The Agreement specifically provides that only Citi may report the sold debts as sold and transferred and does not provide for the debts to be reported as discharged in bankruptcy. A64 ¶ 33. Midland is not responsible for correcting or updating information on any debts listed in the name of Citi, even those it purchased and, as a matter of practice, Midland refuses to correct or delete tradelines for debts which, although discharged in bankruptcy, are in Citi's name rather than Midland's. A64 ¶¶ 34-35. Further, the credit reporting agencies will not permit Midland to make any

---

[1] In ¶ 30 of the Complaint, Midland is erroneously referred to as "CACH."

change in tradelines listing Citi as the creditor. A64 ¶ 36. Plaintiff's credit reports list the debt only in Citi's name and not in Midland's. A64 ¶ 37. Midland is not listed anywhere in Plaintiff's credit report for the Citi debt. *Id*. Thus, Citi was aware that only it could effect a change in Plaintiff's tradeline to correctly reflect that the debt had been discharged in bankruptcy. A64-65 ¶ 38. Citi knows that only it alone can delete or correct such a tradeline, because they have now done so for Plaintiff's debt. *Id.*

Citi's refusal to correct the tradeline to reflect the discharge had an adverse effect on Plaintiff because she was denied her fresh start provided by the bankruptcy discharge, and she is aware that her ability to obtain credit, housing, student loans or other employment was adversely affected by the erroneous credit information. A65 ¶ 39.

Citi notifies individuals, before they file bankruptcy, that they should pay their delinquent debts because Citi will place a charge off or other similar "past due" notations on their credit reports. A65 ¶ 42. Citi's letters threaten to ruin the debtors' credit reports and, thereby, jeopardize their relations with potential employers, mortgage companies and/or landlords, and car dealerships unless they pay the past due debt. *Id*. Purchasers of Citi's debt and other debt collectors also routinely advise consumers that, unless they pay on past due debts, they will receive a delinquent charge off, or other past due notifications, on their credit reports. *Id*.

Since 2004, Citi knew that a large number of discharged debtors had notified Citi and sued them for their willful policy of not removing the charge off or other negative information from their credit reports, in violation of the discharge injunction. A66 ¶ 45. Nonetheless, Citi willfully persisted in its policy to not update credit reports of Plaintiff and other putative class members for the purpose of obtaining a monetary benefit for Citi, or for the benefit of Citi's third-party purchasers of the delinquent debt. A66 ¶ 46.

Given Citi's refusal to correct the tradeline, the only way former debtors can remove the inaccurate information from their credit reports is to pay the discharged debt. A70 ¶ 66. This belief is intentionally reinforced by Citi. A70-71 ¶¶ 67-68. When class members contact Citi asking Citi to correct the erroneous credit information, Citi routinely advises these individuals that it will not remove the erroneous information unless the debtors pay the debt. *Id*. As a result, these individuals often pay the debt despite the fact that it has been discharged in bankruptcy. *Id.* Citi knows that it is obtaining repayment on debts that have been discharged in bankruptcy. *Id*.

Citi has been on notice, since at least 2007, that its practice was in violation of § 524 of the Bankruptcy Code. A72 ¶ 74. Despite this notice, Citi has willfully, recklessly and negligently failed to correct its practice to update credit information upon learning of a discharge in bankruptcy. A72 ¶ 75.

## B. Procedural History

Because Citi refused to correct Plaintiff's credit report to reflect that her Citi debt had been discharged in bankruptcy, on March 13, 2014, Plaintiff filed a motion to reopen her bankruptcy proceeding so she could file a motion to find Citi in contempt of the discharge injunction. A32. The notice specifically demanded that Citi remove the charge off from her credit reports. *Id.* After Plaintiff filed the motion, Citi finally, on March 25, 2014, requested that the credit reporting agencies delete the charge off and the tradeline referring to Plaintiff's account. A63 ¶ 27.

This adversary proceeding, brought against Citi on April 30, 2014, has been through an eight (8) year procedural gauntlet. A37-38. Citi moved to compel arbitration and to stay the proceeding on June 30, 2014. A38. Citi also moved to dismiss the Complaint and to strike the class action allegations. A43-44. The court denied the motion to dismiss, although no order of dismissal was entered on the docket. A129. Citi's motion to stay in favor of arbitration was also denied, and the court denied Citi's motion for a stay pending appeal. A42-43, A50.

Citi then changed tack and moved for a stay pending appeal on the condition that it would agree to delete the charge offs or amend the tradelines for class members to indicate discharge included in bankruptcy during the pendency of the appeal. A49, Dkt. No. 89. On that condition, the court granted the motion for a stay pending appeal. A49, Dkt. No. 92.

10

The bankruptcy court's decision to stay in favor of arbitration was reversed by the district court, *Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*), Nos. 15 CV 1934, 15 CV 3311, 2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015). Plaintiff sought mandamus relief, and after this Court issued its decision in *Anderson v. Credit One, N.A.* (*In re Anderson*), 884 F.3d 382 (2d Cir. 2018), *cert. denied* 139 S. Ct. 144 (2018), the matter was remanded to the district court, which reversed its earlier decision and denied the motion for a stay in favor of arbitration. *Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*), Nos. 15 CV 1934, 15 CV 3311, 2019 WL 1017293 (S.D.N.Y. Mar. 4, 2019). That decision was affirmed on appeal. *Belton v. G.E. Capital Retail Bank* (*In re Belton*), 961 F.3d 612 (2d Cir. 2020).

On remand, the bankruptcy court gave Citi leave to refile its motion to dismiss, which was granted in part and denied in part on August 10, 2021. A130. Citi then moved for an interlocutory appeal, which was granted by the district court on December 27, 2021. A280-292. This Court accepted the appeal on May 4, 2022. A293.

## STANDARD OF REVIEW

The denial of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is reviewed *de novo*. *Goe v. Zucker*, 43 F.4th 19, 28 (2d Cir. 2022).

The bankruptcy court's legal conclusion as to whether subject matter jurisdiction exists is subject to *de novo* review and factual findings in connection with that determination are reviewed for clear error. *A&B Alt. Mktg. Inc. v. Int. Quality Fruit Inc.*, 35 F.4th 913, 915 (2d Cir. 2022).

## ARGUMENT

## I. THE COMPLAINT STATES A CAUSE OF ACTION FOR VIOLATION OF THE DISCHARGE INJUNCTION OF § 524 AND VIOLATION OF THE INDIVIDUAL DISCHARGE ORDERS.

The "fresh start" given to former debtors is the principal purpose of the Bankruptcy Code. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007). For this reason, § 524 imposes a statutory injunction against any act to collect on a debt that has been discharged in bankruptcy.

Bankruptcy courts have overwhelmingly held that the failure of a creditor to update a credit report to show that a debt has been discharged in bankruptcy, if done for the purpose of attempting to coerce the former debtor to pay the debt, is a violation of the individual discharge order and the discharge injunction contained in § 524. *See Anderson v. Credit One Bank* (*In re Anderson*), 641 B.R. 1, 14 (Bankr. S.D.N.Y. 2022); *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), Adv. Pro. No. 13-08370, 2014 WL 3608891, at *2 (Bankr. S.D.N.Y. July 22, 2014); *In re Nassoko*, 405 B.R. 515, 525 (Bankr. S.D.N.Y. 2009); *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 487-88 (Bankr. E.D.N.Y.

2007); *Russell v. Chase Bank, USA, N.A.* (*In re Russell*), 378 B.R. 735 (Bankr. E.D.N.Y. 2007); *Torres v. Chase Bank USA, N.A.* (*In re Torres*), 367 B.R. 478, 485-86 (Bankr. S.D.N.Y. 2007); *Torres Ramos v. Cooperativa De Ahorra* (*In re Torres Ramos*), Adv. Pro. No. 19-00456, 2021 WL 4465547, at *4 (D. P.R. Sept. 29, 2021); *Laboy v. First Bank P.R.* (*In re Laboy*), 2010 Bankr. LEXIS 345 (Bankr. D. P.R. Feb 2, 2010); *Lohmeyer v. Alvin's Jewelers* (*In re Lohmeyer*), 365 B.R. 746, 750-51 (N.D. Ohio 2007); Collier on Bankruptcy, ¶ 524.02(b) (16th ed. 2022); *see also DiBattista v. Selene Fin. LP* (*In re DiBattista*), 615 B.R. 31, 43 (S.D.N.Y. 2020) (citing *Torres* approvingly); *Minech v. Clearview Fed. Credit Union* (*In re Minech*), 632 B.R. 274, 281-84 (Bankr. W.D. Pa. 2021) (holding that an inaccurate credit report standing alone is not a violation of § 524, but "an inaccurate credit report could be an act to coerce payment if the creditor knowingly refuses to correct it to reflect the discharge.").

All of these cases recognize that adopting a policy of refusing to correct credit reports to indicate that a debt is discharged in bankruptcy is an attempt to lay a trap for the former debtor, because the indication that a debt is "delinquent," such as through a "charge-off" or other similar notation, rather than "included in bankruptcy" or "discharged in bankruptcy," significantly impedes an individual from obtaining credit. The former debtor may therefore be compelled to actually pay the discharged debt to remove the delinquent report from her credit report. *See*

Jessica Silver-Greenberg, *Debts Canceled by Bankruptcy Still Mar Credit*, N.Y. Times, Nov. 13, 2014 at A1. When the creditor's purpose is to coerce the former debtor to pay on the debt, it violates § 524 and the discharge order.

Judge Drain, who presided over the adversary proceeding in bankruptcy court, in ruling in a similar case raising almost identical factual allegations, succinctly encapsulated why such conduct violates § 524:

> Credit One's systematic refusal to correct its credit tradelines to reflect debtors' discharges was, as alleged in the complaint and required to be accepted as true based on its Rule 37(b) default, willful, knowing, and intended to pressure obligors like Anderson to pay their debts based on the obligors' reasonable belief that the inaccuracy of such information provided to the credit reporting agencies would adversely affect their ability to obtain credit, housing, and employment…. Credit One's systematic conduct was in bad faith and in full knowledge that it was violating Anderson's discharge under the Bankruptcy Code.

*In re Anderson*, 641 B.R. at 49-50.[2]

Citibank attempts to distinguish the overwhelming body of case law cited above by arguing that it did nothing more than fail to change a credit report after it received notification of bankruptcy. But as the bankruptcy court found, "this complaint actually alleges substantially more than that." A165:4-5. Citi consistently

---

[2] In *In re Anderson*, Credit One was subject to a default judgment on the merits because of its egregious misconduct during discovery. Here, on a motion to dismiss, these similar allegations must be taken as true—a fact which Citi consistently ignores—and Judge Drain's reasoning is equally applicable to the facts of this case.

ignores the well-pleaded factual allegations in the Complaint, which plainly set forth Citi's policy of refusing to correct tradelines after receiving notice of discharge in bankruptcy *for the purpose* of attempting to collect on a discharged debt. Citi also argues that this case involves nothing more than the refusal to accept a settlement offer from Plaintiff's counsel,[3] but again, it ignores the Complaint. Citi's refusal to correct Plaintiff's tradeline until it was charged with contempt is unequivocal evidence of this overriding policy, and it is that policy which is clearly alleged in the Complaint and, at the motion to dismiss stage, must be accepted as true.

Indeed, Citi continued to refuse to correct the tradelines for members of the proposed class, even when it was urged to do so by the bankruptcy court as a condition of granting Citi's requested stay pending its appeal of the arbitration decision, as defendants in other related actions had agreed to do. *See* Jessica Silver-

---

[3] Citi's reliance on the settlement proposal is inappropriate for three reasons: First, it is information outside the complaint that is not relevant on a motion to dismiss. Second, it was clearly a communication protected by Rule of Evidence 408. Third, Citi fails to advise the Court of the context of the offer: that Mr. Juntikka had brought four prior actions against Citi, all of which settled, for exactly the same conduct (*see In re Ryan*, No. 10-14068, Dkt. No. 13 (Bankr. S.D.N.Y.); *In re Williams*, No. 1:07-45952, Dkt. No. 10 (Bankr. E.D.N.Y.); *In re Miranda*, No. 10-13504, Dkt. No. 14 (Bankr. S.D.N.Y.); *In re Feliciano*, No. 08-14355, Dkt. No. 8 (Bankr. S.D.N.Y.)); that Citi then asked Mr. Juntikka to bring claims to its attention prior to filing suit; that Mr. Juntikka had to write to Citi to get it to remove charge offs **300 times** and that Citi continued to refuse to change its policy even after Mr. Juntikka brought this issue to Citi's attention literally hundreds of times. This is why Citi's actions are purposeful bad faith acts to collect and are not mere inaction as it now asserts.

Greenberg, *Bank of America and JPMorgan Chase Agree to Erase Debts from Credit Reports After Bankruptcies*, N.Y. TIMES, May 8, 2015, at B1. After Citi's counsel refused to correct the tradelines, the court noted, "given the fight I'm getting, it's clear to me, crystal clear to me, why Citi is doing this." SA-20:18-20. The Court went on to find:

> I continue to believe that there's one reason, and one reason only, that Citibank refuses to change its policy, which I believe is a policy, at least as asserted in this Complaint, as evidenced by the fact that, as I said before, if there ever was a time to enforce a policy, it would be in connection with this matter. It has a policy because it makes money off of it, and it makes money off it because it thinks it's found a way to get around the cases like <u>Torres</u> and the like by saying, oh, it's not really the creditor.
>
> . . . .
>
> As the complaint alleges, one can reasonably infer that there's a concerted policy here that makes money for Citibank by increasing the value of this debt based upon the pressure of not correcting the credit report on the debtor.

SA-3420-35:6; SA-38:6-9.

The cases Citi relies on are not to the contrary. In each of those cases, the court held that the failure of a creditor to correct a tradeline, *standing alone*, does not constitute an attempt to collect a discharged debt in violation of § 524, but most recognize that if the failure to correct the tradeline is part of an attempt to collect on a discharged debt, then that is a violation of § 524. *See Ho v. JP Morgan Chase* (*In re Ho*), 624 B.R. 748, 755-56 (Bankr. E.D.N.Y. 2021) (holding that credit report was not an error and, in any event, failure to correct a credit report "standing alone" is

not a violation of § 524); *Caldwell v. Redstone Federal Credit Union*, No. 2:15-cv-01923, 2018 WL 3518466 (Bankr. N.D. Ala. July 20, 2018) (distinguishing the facts from *Torres* and *Russell*, noting that in those cases, plaintiffs alleged a policy of refusing to correct credit reports for the purpose of collecting on discharged debts.); *Mogg v. Midwest Collection Services* (*In re Mogg*), Adv. Pro. No. 07-3076, 2007 WL 2608501 (S.D. Ill. Sept. 5, 2007) (holding that creditor's failure to correct credit report, with nothing more, is not a violation of § 524); *Bruno v. First USA Bank, N.A.* (*In re Bruno*), 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006) (finding that "§ 524, standing alone, [does not] compel[] a lender to take the affirmative step of notifying its credit reporting agency or agencies that the defalcation that was previously reported has been discharged in bankruptcy."); *Irby v. Fashion Bug* (*In re Irby*), 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) ("This does not mean that the reporting of a discharged debt is immune from the reach of the discharge injunction. § 524(a)(2) enjoins any 'action' or 'act' to recover a debt. Thus, for example, if the act of reporting the debt was undertaken for the specific purpose of coercing the debtor into paying the debt, a violation of the discharge injunction could be established."); *Vogt v. Dynamic Recovery Resources*, 257 B.R. 65, 71 (Bankr. D. Colo. 2000) ("False reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code."). In contrast to these cases, it is alleged here that Citi

adopted a policy of refusing to correct tradelines after receiving notice of bankruptcy *for the purpose* of coercing debtors to make payments on discharged debt.

Citi also argues that it is being asked to enter improper or inaccurate information on its credit reports by ignoring the fact that the debt, prior to bankruptcy, had been delinquent and had been marked "charged off." That, of course, is not Plaintiff's position. Plaintiff's position, and the holding of the court below, is quite clear. Listing the *current status* of a discharged debt as "charged off," "past due," or similar delinquent notations is fundamentally inaccurate because it indicates that the debt is still due and owing. The fact that the former debtor filed bankruptcy and received a discharge can, and should be, accurately described in the credit report. But listing the current status of a debt as "charged off," while also noting that there had been a discharge in bankruptcy, is the worst possible notation because it creates the implication that the debtor filed bankruptcy, but that her Citi debt was not discharged in bankruptcy because of the debtor's fraud. *See*, *e.g.*, *In re Anderson*, 641 B.R. at 50 ("Thus showing a bankruptcy *and* an outstanding debt on the credit report also would reasonably suggest to a debtor that those reviewing the credit report were being told that he was guilty of a bad act for which he did not deserve a discharge.").

Citi also argues that its refusal to correct the tradelines is consistent with its requirements under the Fair Credit Reporting Act ("FCRA"). The issue in this case,

of course, is not whether Citi complied with the FCRA, but whether it violated its separate obligation to comply with § 524. As Judge Drain found in *Haynes*, 2014 WL 3608891 at *3, there is no basis to argue that the FCRA in some way preempts or overrides the independent obligations of a creditor under § 524. In any event, Citi's reading of the FCRA is flatly incorrect. The FCRA expressly requires that a creditor, having learned that its tradeline is inaccurate, which Citi unquestionably did, has an affirmative duty to correct the tradeline to present accurate information. 15 U.S.C. § 1681s-2(a)(2). Citi also relies upon *proposed* FCRA regulatory guidance that states that, once an account is transferred, the furnisher would generally have no duty to update the current status of the account. As Judge Drain held in *Haynes*, not only was this guidance never adopted, but it is flatly contradicted by the express language of the FCRA itself. *In re Haynes*, 2014 WL 3608891 at *4; 15 U.S.C. § 1681s-2(a)(2)(B) ("Duty to correct and update information" requires anyone who regularly furnishes credit information and who determines that the information is not complete or accurate "shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.").

Citi also relies on a CFPB regulation addressing how creditors are supposed to handle inquiries from consumers that states that a creditor is generally not required to respond to inquiries related to public filings, including bankruptcies, 12 C.F.R. § 1022.43(p)(1)(iv). Def's Br. at 43. But that regulation does not address the specific issue here: *i.e.*, where a credit report is actually inaccurate because a specific debt has been discharged in bankruptcy, and the creditor's duty to correct that report under the FCRA.

Citi further argues that it had no duty to correct the tradeline because Plaintiff's bankruptcy occurred after Citi had sold the debt to Midland, and Citi was no longer a "creditor." This argument is without merit for several reasons. First, as Judge Drain held below, § 524 is not limited to creditors. A243 at 04-12. The section applies to any "act" to collect a discharged debt by anyone. It is the nature of the act, not the identity of the actor, that defines the offense. Second, even though Citi sold the debts to Midland, Citi was actively attempting to collect the debt because of its refusal to correct the tradelines, knowing that the delinquent tradeline would induce the former debtors to pay the debt. A243 at 19-A244 at 10. Even after sale, the tradeline was still in Citi's name and only Citi could correct it, which Citi does not dispute. Third, the Complaint alleges that Citi acted as Midland's agent, collecting on debts that may have been discharged in bankruptcy and forwarding those payments to Midland. A71 at ¶ 71.

20

What Judge Drain held in *Haynes* applies equally here, since virtually the same allegations are presented in the instant Complaint:

> Chase is alleged to act as the buyer's agent in forwarding payments to the buyer of the debt that has been discharged after retaining a percentage. Instead of sending the money back, or at least acting as if that debt had been discharged, it thus is helping to enforce the debt's collection for its and its buyer's benefit. Given Chase's continuing relationship with the debt, therefore, and drawing, as I should, all inferences in favor of the Plaintiff in a motion to dismiss context, I conclude that the complaint shows a motive and intent to assist the collection of the discharged debt lying behind Chase's refusal to correct the credit reports.

*In re Haynes*, 2014 WL 3608891 at *5. As in *Haynes*, when Citi receives a payment on a discharged debt, it does not return it to the former debtor, but forwards it to Midland, the buyer of the debt. A71 at ¶ 71.

Citi's refusal to correct tradelines to reflect discharge in bankruptcy enhances the value of the charged off debt that it sells to third parties, because it knows that the continued false reporting on the credit report by Citi will induce debtors to pay to remove the delinquency from their credit reports. A61 at ¶ 10. As Judge Drain reasoned:

> Furthermore, by failing on a systematic basis to correct the credit reports, as alleged in the complaint, Chase is enhancing its purchasers' ability to collect on the debt, which is, after all, charged off debt when purchased, with a relatively high, I can infer, prospect of the borrower going into bankruptcy. Chase's profits, I can infer and as the Complaint states, from that practice getting a higher percentage price from its buyers, even if those buyers buy the debt before the bankruptcy has occurred. The buyers know, that post-sale, Chase will refuse to correct the credit report to reflect the obligor's bankruptcy discharge, which

21

means that the debtor will feel significant added pressure to obtain a
"clean" report by paying the debt.

*In re Haynes*, 2014 WL 3608891 at *5.

Citi's reliance on *In re Kalikow*, 602 F.3d 82 (2d Cir. 2010) is inapposite.
There, the appellants, who had no relationship to the pre-discharged debts or the
creditors, sought to induce the creditors to challenge the truthfulness of the debtor's
disclosures during the bankruptcy proceedings. This Court held that appellants
could not be sanctioned for violating the confirmation plan or order because they
were not parties to the order. Significantly, this Court held that appellants could not
be held liable as accessories or agents of the creditors because none of the creditors
"took any prohibited act as a result of" appellants' actions. *Id*. at 95. Specifically,
this Court found that no creditor contacted the debtor as a result of appellants'
actions and the debtor was in no way "pressured" to pay a discharged debt. *Id*. at
96. Moreover, contrary to Citi's contention, this Court did not say in *Kalikow* that
only creditors are bound by § 524, rather, it said that only parties to a confirmation
order were bound by that order. *Id.* at 95. Here, unlike as in *Kalikow*, Citi is acting
as agent for Midland, a creditor, in putting pressure on debtors to pay the debts that
Citi sold to Midland and is doing so for its own commercial advantage.

Finally, Citi contends that the court below speculated that there was a "secret"
agreement between Citi and Midland and the court should not have relied on that
alleged agreement as a basis to hold Citi liable. Defs.' Br. at 21. Citi misstates the

court's holding. What the court held was that Citi's agreement with Midland, which was alleged in the Complaint, could not be relied on by Citi as some kind of defense for its actions in violation of § 524. A252-253. Any agreement Citi had with Midland that purported to allocate liability between those parties for violation of any federal law, including the Bankruptcy Code, is legally irrelevant to Plaintiff's claims here. Any such agreement has no impact on whether or not Citi violated § 524 by adopting a policy of refusing to correct tradelines to indicate that the debts were discharged in bankruptcy. How Citi and Midland apportioned their responsibility for these illegal acts does not make them any less illegal. Apart from any agreement it had with Midland, Citi itself took action to collect on discharged debt. A158-163; A250-A254.

## II. CITI HAS NO DEFENSE UNDER *TAGGART*.

Citi argues that the purported ambiguity of its obligations under the FCRA and what it claims to be contrary case law indicates that there is "fair ground of doubt" that the discharge injunction was violated by Citi's actions, and therefore that no contempt can be found under *Taggart*, 139 S. Ct. at 1802. Def's Br. at 47. There are several fundamental flaws in Citi's argument.

First, as *Taggart* itself recognizes, the "fair ground of doubt" standard to measure the objective reasonableness of a party's actions has no application in the situation where the defendant has a *subjective* bad faith intent to violate the

23

applicable order. "[C]ivil contempt sanctions may be warranted when a party acts in bad faith." *Taggart*, 139 S. Ct. at 1802; *In re DiBattista*, 615 B.R. at 39 (same). That is what is expressly alleged here. As in *Anderson*, the Complaint alleges that Citibank *intended* to violate the individual discharge orders and the injunction of § 524 by purposely adopting a policy designed to induce collection on discharged debts. This "systematic conduct was in bad faith and in full knowledge that it was violating [Bruce's] discharge under the Bankruptcy Code." *In re Anderson*, 641 B.R. at 50. Thus, *Taggart*'s standard for objective reasonableness has no application here.[4]

Second, *Taggart* only sets forth the standard for determining whether a party can be punished for contempt under § 524. It does not speak at all to the questions of whether Plaintiff and the class are entitled to a declaratory judgment that Citi's actions violate § 524 or whether they are entitled to restitution of funds paid on discharged debt. These are separate and distinct claims. They do not involve contempt at all and no determination of contempt needs to be made to adjudicate them. The Complaint expressly seeks such independent relief. A75-A76, ¶¶ 89, 1,

---

[4] For this reason, Citi's objection that "Plaintiff never sought to amend her complaint which only pled willfulness, not objectively unreasonable conduct" (Def's Br. at 51), proves the point. It is indeed Plaintiff's contention that Citi's conduct was a willful attempt to collect on a discharged debt, making the objective reasonableness of the conduct irrelevant.

5.  Even if this Court were to determine that no contempt sanction were appropriate, that should not immunize Citi from a declaration that its conduct violated § 524 and that it should refund payments obtained on debts that were discharged in bankruptcy.

<u>Third</u>, even if an objective standard applied, there can be no doubt that what Citi is alleged to have done violates § 524. For the reasons explained above, Citi's reliance on other case law or regulatory guidance is misplaced, and Citi has known for years that the overwhelming case law—within this Circuit and elsewhere—holds that a policy of refusing to correct tradelines for the purpose of collecting on a discharged debt violates § 524. As Judge Drain held below:

> [T]he case law is uniform that while inaccurate credit reporting standing alone is not enough to assert a violation of a discharge, if the allegation of inaccuracy is combined with allegations such as those in the complaint here, that the defendants refused to correct a credit report, did not give a valid basis for doing so, and had clear knowledge of the pressure that would be imposed upon the former debtor because of the failure to correct, there would be a violation of the discharge.

A248 at 10-18.

## III.  THE BANKRUPTCY COURT HAS SUBJECT MATTER JURISDICTION TO ADJUDICATE A NATIONWIDE CLASS IN THIS PROCEEDING.

Citi argues that the bankruptcy court erred in refusing to strike the class claims, even before a motion to certify the class had been made. Citi argues that the bankruptcy court lacks the power to entertain a national class of individuals who were subject to Citi's violation of the statutory injunction of § 524 and the standard

discharge order. Citi apparently concedes (as it must) that the bankruptcy court has subject matter jurisdiction over such a national class, yet it argues that the exercise of such jurisdiction violates some "foundational equitable principles" that prohibit one court from enforcing the injunctions of another. Defs.' Br. at 53.

In fact, there is no such absolute rule. In rejecting the exact same argument that is made here, one bankruptcy court recently held that "[a]s the Supreme Court has stated, 'sanction[s] for violations of an injunction . . . are *generally* administered by the court that issues the injunction.'" (quoting *Baker v. General Motors Corp.*, 522 U.S. 222, 236 (1998)) (emphasis added), but "that is merely the starting point and does not answer the question of whether the issuing court may also entertain a request for *broader* relief, or whether *only* the issuing court may determine whether a violation has occurred." *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), Adv. Pro. No. 17-1085, 2022 WL 10707498, at *47 (Bankr. E.D.N.Y Oct. 17, 2022). The Supreme Court's use of the word "generally" in *Baker* indicates that this is "not a jurisdictional limitation." *Id.* (quoting *In re Anderson*, 641 B.R. at 16-17). And indeed, as is more fully set forth below, there is no such jurisdictional limitation. Instead, the issue is one of discretion in considering comity among coordinate courts. It is not an absolute rule nor a foundational jurisdictional limitation as Citi contends.

In any event, even if there are limitations on the bankruptcy court's power to entertain a class seeking relief in the form of contempt, there are no limitations on

the court's power under § 105 to assert jurisdiction over a national class for the purpose of a declaratory judgment that Citi's actions violate of § 524 and an order requiring restitution of funds paid on discharged debts.  Citi does not dispute that such declaratory relief and restitution could be provided.  Indeed, Citi could not, because bankruptcy courts enjoy equitable power under § 105 to remedy violations of specific Bankruptcy Code violations.  *In re Kalikow*, 602 F.3d at 97.

The decision by the court below to exercise jurisdiction over a national class is consistent with seven (7) other decisions by lower courts, including several in this Circuit, holding that a bankruptcy court has jurisdiction to certify a nationwide class when all members of the class allege the same violation of § 524 and the standard discharge order by a defendant over whom the court has personal jurisdiction.  *See, e.g.*, *In re Homaidan*, 2022 WL 10707498 at *46-53; *In re Anderson*, 641 B.R. at 15-20; *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6, at *19-32 (Bankr. E.D.N.Y. 2021); *In re Golden*, 630 B.R. at 917-26; *In re Haynes*, 2014 WL 3608891 at *6-9; *Vick v. NCO Fin. Systems, Inc.*, No. 2:09-CV-114, 2010 WL 1330637, at *4 (E.D. Tex. March 15, 2010, *report and recommendation aff'd.*, 2010 WL 1328830 (E.D. Tex. March 30, 2010); *Cano v. GMAC Mortgage Corp.* (*In re Cano*), 410 B.R. 506, 543-55 (Bankr. S.D. Tex. 2009); *see also Rojas v. Citicorp Trust Bank FSB* (*In re Rojas*), Adv. No. 09-07003, 2009 WL 2496807, at *10 (Bankr. S.D. Tex. August 12, 2009).

27

Further, contrary to Citi's assertions, the only court of appeals to comprehensively address this issue held in favor of such a national class. *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439 (1st. Cir. 2000).

In addition, five decisions in this Circuit have approved of nationwide settlements involving alleged violations of § 524 arising out of adversary proceedings brought in bankruptcy court. As Judge Stong noted in *Ajasa*, 627 B.R. at 26, these settlements would have been improper if the bankruptcy court lacked jurisdiction over a national class. *See Ajasa*, 627 B.R. at 26 (collecting cases).

For the reasons set forth below, this Court should adopt the reasoning of these cases:

## 1.    This Court has Subject Matter Jurisdiction Over a National Class.

There can be no doubt that this Court has subject matter jurisdiction over Plaintiff's core bankruptcy claims. Subject matter jurisdiction here is provided by 28 U.S.C. § 1334(b) which gives district court's jurisdiction over all civil proceedings arising under Title 11. The enforcement of the discharge injunction here is a core bankruptcy matter that arises under 11 U.S.C. §§ 727, 524 and 105. Once federal subject matter jurisdiction is proper in the district court as to a core bankruptcy matter arising under the Bankruptcy Code, subject matter jurisdiction is proper in the bankruptcy court to which the matter is referred under 28 U.S.C. § 157.

While bankruptcy court jurisdiction is often founded on "related to" jurisdiction over the *in rem* debtor's estate, and only one court should administer that *in rem* estate, that is not the only basis for jurisdiction nor is it the basis of subject matter jurisdiction here. *In re Haynes*, 2014 WL 3608891 at *6-7 (actions under 11 U.S.C. §§ 524 and 727 are concerned with prohibiting the collection of *in personam* debts and have nothing to do with the debtor's estate or *in rem* jurisdiction).

Similarly, bankruptcy jurisdiction founded on 28 U.S.C. § 1334(e), which states that the court where a case is commenced has exclusive jurisdiction over the "debtor's property" and "estate," is not implicated here. *In re Haynes*, 2014 WL 3608891 at *7 ("Again, however, the present class action does not involve a debtor's interests in property or property of the estate. . . . It is an action to enforce the discharge, that is, to protect a statutory right prohibiting collection of *in personam* claims against the members of the debtor class that arose pre-bankruptcy.").

Here, subject matter jurisdiction is provided by 28 U.S.C. § 1334(b) which provides jurisdiction over proceedings "arising under" Title 11.

Moreover, subject matter jurisdiction is not lost or limited because the action is brought as a class action. Class actions are expressly allowed in the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7023 ("Rule 23 F. R. Civ. P. applies in adversary proceedings"); *In re Rojas*, 2009 WL 2496807 at *1 ("[N]othing in the jurisdictional statute limits the District Court's subject matter jurisdiction (and by

extension, the matters that can be referred to the bankruptcy judges) to claims filed by debtors with bankruptcy cases pending in this District.").[5]

The question of whether this Court should entertain a nationwide class and thereby enforce the discharge orders of other courts is not a question of jurisdiction, but one of discretion considering comity among coordinate courts. *See In re Anderson*, 641 B.R. at 15-19 and n.9; *Baker v. General Motors Corp.,* 522 U.S. 222, 249 (1998) (Kennedy, J., concurring) (recognizing that the policy behind rules that limit enforcement of injunctions to the rendering court is based on considerations of comity among coordinate courts); *Grey v. Petroseed Inc.*, 985 F. Supp. 625, 632-34 (D. S.C. 1996) (holding that the question of whether contempt of a court order can be adjudicated by another court is a question of comity, not subject matter jurisdiction.).

---

[5] Numerous courts have approved national class actions in bankruptcy court. *See, e.g.*, *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 896, 921-22 (Bankr. E.D.N.Y. 2021) (collecting cases); *In re Jones*, 16-03235 (Dkt. No. 44) (S.D. Tex. May 19, 2017); *In re Cano*, 410 B.R. 506, 543-55 (S.D. Tex. 2009); *In re Krause*, 414 B.R. 243, 252-56 (S.D. Ohio 2009); *In re Patrick*, 344 B.R. 56, 60 (Bankr. M.D. Pa. 2005); *In re Sims*, 278 B.R. 457, 485-89 (Bankr. E.D. Tenn. 2002); *Bank United v. Manley*, 273 B.R. 229 (N.D. Ala. 2001); *In re Harris*, 280 B.R. 876 (Bankr. S.D. Ala. 2001); *In re Noletto*, 244 B.R. 845 (S.D. Ala. 2000); *In re Sheffield*, 281 B.R. 24 (Bankr. S.D. Ala. 2000).

**2.** **The Supreme Court Mandates that Courts Exercise Their Subject Matter Jurisdiction.**

Once there is jurisdiction, federal courts have a "virtually unflagging obligation to exercise it." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). A refusal to exercise subject matter jurisdiction has been described as a violation of the separation of powers and a usurpation of legislative authority, and characterized by the Supreme Court as "treason to the Constitution." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution."). In short, "the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989).

Because federal courts are duty-bound to exercise their subject matter jurisdiction, there are very few circumstances when a federal court should not carry out its duty. The Supreme Court has explicitly prohibited limiting the exercise of subject matter jurisdiction on prudential grounds. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has

denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates.").

Citi has not shown and cannot show that any of the limited circumstances for declining to exercise subject matter jurisdiction exist here.

3. **There Is No "Fundamental Equitable Principle" That Prevents The Bankruptcy Court from Exercising Subject Matter Jurisdiction Over a National Class.**

Citi apparently concedes that the bankruptcy court in this proceeding has jurisdiction to certify a national class, but nonetheless argues that "foundational equitable principles" (Def's Br. at 53) prohibit the exercise of such jurisdiction. According to Citi, those foundational equitable principles preclude one judge from enforcing the injunction of another judge. It bases these "foundational equitable principles" on *In re Debs*, 158 U.S. 564 (1895). But *Debs* does not address at all the issue before the Court, *i.e.*, whether a bankruptcy court can exercise its class action jurisdiction over a national class, all of whom have suffered the same injury. In *Debs*, the issue was whether the Court could hold strikers who had violated the court's injunction in contempt, or whether it was necessary to prosecute the strikers under criminal law and afford them trial by jury. The Supreme Court held that each court has the inherent power to punish violations of its own orders.[6] In dicta, the

---

[6] That was also the holding in *Int'l Union v. Bagwell*, 512 U.S. 821, 831 (1994), on which Citi also relies. In that case, the Court held that all courts must have the power

Court went on to note that one juridical body could not enforce by contempt the orders of another body, citing early English law. But those cases spoke to the question of whether Parliament could punish a contempt for violation of a court order, or, vice versa, whether a court could punish a contempt of Parliament. Or whether King's Bench, a court of law, could relieve a person of contempt of the Court of Chancery, a court of equity. *See In re Yates*, 4 Johns. 317, 368-71 (S. Ch. N.Y. 1809). The cases do not speak at all to the argument that an individual judge's order can only be enforced by that judge, but rather that contempts of one juridical body can only be enforced by that body.

Moreover, today's federal system no longer has separate courts of equity and courts of law. The principles that Citi relies on that relate to separate courts and juridical bodies have no meaning here, where there is only one "court" involved, the United States bankruptcy court. That court is constitutionally and legislatively empowered to carry out its subject matter jurisdiction and to utilize Rule 23 to maintain a nationwide class action.

*Ex parte Bradley*, 74 U.S. 364, 374 (1868) is equally inapposite. In that case, the Supreme Court held that one court could not punish an attorney for contemptuous conduct before a judge in another court, where the contempt was of the type that was

---

to punish contempt of their orders, but that serious criminal contempts implicate rights of trial by jury.

"committed in open court, or in immediate view and presence, tending to interrupt its proceedings, or to impair the respect due to its authority." In that case there was also confusion as to which "court" the proceedings took place in because one court was legislatively dissolved and the Supreme Court held that the wrong court took cognizance of the alleged contempt.

In any event, it is clear that neither *Debs* nor *Bradley* was laying down a rule of subject matter jurisdiction because it is clear that the bankruptcy court indeed has subject matter jurisdiction over the class action asserted in this case. "The setting in *Debs* is far removed indeed from the question of whether a court in one federal district may consider whether the statutory bankruptcy discharge injunction has been violated by a defendant in another federal judicial district." *In re Ajasa*, 627 B.R. at 27.

Moreover, as Judge Drain explained in *Haynes*, 2014 WL 3608891 at *8, to the extent that *Debs* places a limitation on jurisdiction under the All Writs Act, 28 U.S.C. § 1451, that limitation does not apply to § 105. The All Writs Act, by its very language, gives each court the power to issue writs necessary and appropriate to aid *that* court's jurisdiction. *Id*. In contrast, the language of § 105 is much broader and gives each bankruptcy court the power to issue orders "necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105. As Judge Drain explained, the legislative history of § 105 makes it clear that the section was intended

to "cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute." *In re Haynes*, 2014 WL 3608891 at *8 (quoting H.R. Rep. 95-595) (Emphasis added by Judge Drain).

> **4.    It Is Appropriate for the Bankruptcy Court to Exercise Nationwide Jurisdiction Because of the Uniformity of the Discharge Order and the Application of § 524.**

Having found that subject matter jurisdiction exists over this nationwide class action, there is no reason the court should not exercise it. Not only are the legal and factual issues the same for the entire class, but relegating class members to individual cases would defeat one of the key purposes of class actions: avoiding inconsistent, individual adjudications and incompatible standards of conduct for how a defendant should treat similarly-situated class members. *See* Fed. R. Civ. P. 23(b)(1)(A).

As noted above, because the issues before the court are common legal questions that are the same for the entire class, they should be answered the same way for everyone in the class. Citi's purported rationale for requiring the judge that issued an injunction to be the one who enforces it should not apply to a determination of whether Citi's actions violate the statutory injunction of § 524. Statutory injunctions are fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them. *In re Haynes*, 2014 WL 3608891 at *6-9; *In re Ajasa*, 627 B.R. at 23, 27-28; *Bessette*, 230 F.3d at 445-46; *see also Vick*, 2010 WL 1330637 at *3

(allowing nationwide class to enforce § 524 injunction), *report and recommendation aff'd*, 2010 WL 1328830 (E.D. Tex. March 30, 2010); *In re Rojas*, 2009 WL 2496807 at *10 (allowing nationwide class in contempt proceedings).

While it is true that judges have inherent power to control their cases and proceedings and to sanction behavior that interferes with their lawful orders, (*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)), this case is not seeking contempt for violation of an individually judge-crafted order. This case seeks a declaration that Citi's acts of collection violate § 524 and the standard discharge order.

The discharge orders at issue in this case are not unique to any particular judge and the power to enforce them comes from 11 U.S.C. § 105. The discharge orders at issue are made on identical standardized forms that are used for all debtors nationwide. Citi's argument that there are slight variations in the standard discharge order is unavailing. Those slight variations do not reflect any considered determination of the issuing judge and the forms are substantively identical. "[T]he discharge of a debtor in a Chapter 7 bankruptcy case is generally accomplished by the entry of Official Bankruptcy Form B 318. This official form is approved by the Judicial Conference of the United States, and must be used under Bankruptcy Rule 9009." *In re Ajasa*, 627 B.R. at 27-28. "[T]he discharge order entered in an individual case is a national form from which the bankruptcy courts may not

deviate." *In re Anderson*, 641 B.R. at 17; *In re Haynes* at *8 ("It is not a handcrafted order.").

And because § 524's discharge injunction is statutorily created, a debtor seeking to enforce it need not establish the factors ordinarily required for an injunction under Rule 65. *In re Haynes*, 2014 WL 3608891 at *8 ("By statute, in 524(a)(2), it operates as an injunction. For the discharge injunction to be granted, the debtor does not have to prove the factors required for an injunction under Federal Rule of Civil Procedure 65.").[7] All that is required is to show that the debt was subject to discharge and not specifically declared to be non-dischargeable. *Id.*

As Judge Stong noted in *In re Brizinova*, 565 B.R. 488, 503 (Bankr. E.D.N.Y. 2017), there is an important distinction between individually-crafted court orders and "purely statutory" orders:

> That is not to say that it is never appropriate for one judge to enforce an order that was entered by another judge in a different case. For example, in the bankruptcy context, courts may distinguish between whether they are asked to enforce a "purely statutory order" such as the automatic stay contained in Bankruptcy Code § 362 or the discharge injunction set forth in Bankruptcy Code § 524, on the one hand, and an injunction individually crafted by the bankruptcy judge, on the other.

---

[7] *See* Elizabeth Warren & Jay L. Westbrook, *Class Actions for Post-Petition Wrongs: National Relief Against National Creditors*, Am. Bankr. Inst. J. March 2003, at 14, 46-47 (drawing a distinction between violations of court-crafted injunctions and § 524's statutory injunction); Kara Bruce, *The Debtor Class*, 88 Tul. L. Rev. 21, 25,71-74 (2013) (same).

*Id.* at 503 (citations omitted).

The First Circuit followed the same reasoning in *Bessette*, when it ruled that claims for violations of discharge injunctions under § 524 could be brought as a nationwide class. *Bessette*, 230 F.3d at 445. *Bessette* found that § 105 empowered the district court to exercise its equitable powers to facilitate the implementation of other Bankruptcy Code provisions and noted the important distinction between statutory and inherent powers. *Id.* ("§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have" including the power to sanction for contempt). *Bessette* rejected the argument that only the issuing judge could enforce a discharge injunction. According to the court:

> Appellant seeks enforcement of the statutory injunction set forth in § 524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance. Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.

*Id.* at 446; *see also id.* at 445 (noting the significance of "dealing, as here, with violation of a purely statutory order.");[8] *Walls v. Wells Fargo Bank, NA.*, 262 B.R. 519, 528 (Bankr. E.D. Cal. 2001) ("The [automatic stay and discharge] injunctions…are Code created, statutory injunctions. . . . Their extent does not

---

[8] Although on remand, the district court only certified a district-wide class, it is clear that the First Circuit intended that its reasoning apply to a national class.

depend on individual judges for injunctive relief fashioned by individual bankruptcy judges.").

Citi also appears to concede that there are cases holding that the bankruptcy court has the jurisdiction and power to certify a district-wide class. However, it is illogical to hold that one judge can enforce discharge injunctions of other judges within a particular district, but not judges from a different district.[9] If the rationale for restricting jurisdiction to a district-wide class is that only the judge who issued the order can adjudicate contempt of it, then it makes no sense to allow judges in the same district to enforce discharge injunctions issued by other judges within the district. In other words, why would a district-wide class be permissible to adjudicate § 524 claims, but a nationwide class be impermissible? Both seemingly run afoul of the rationale that only the judge who issued the order can adjudicate contempt of it. *See In re Haynes*, 2014 WL 3608891 at *9 (rejecting the district-wide approach and finding nationwide jurisdiction for enforcement of discharge injunctions).

At best for Citi, there are discretionary issues of comity to be considered. However, even if there is some prudential rule that can limit the exercise of subject matter jurisdiction in certain circumstances, the Court should not exercise its discretion to do so here. Nor should such issues of discretion be decided on a motion

---

[9] Some of the cases that take this logically inconsistent position include: *In re Cline*, 282 B.R. 686 (W.D. Wash. 2002); *In re Beck*, 283 B.R. 163 (Bankr. E.D. Pa. 2002).

to strike.  Issues of equity and the "just, speedy, and inexpensive determination of every action and proceeding" support allowing a nationwide class here.  Fed. R. Civ. Pro. 1.  That is especially true here, where the Constitution mandates "uniform Laws on the subject of Bankruptcies."  Const., Art. I, Sec. 8.

As one commentator noted, class actions are especially critical where large, national creditors, such as Citi abuse the bankruptcy laws on a wide scale and debtors do not have the means to stop them effectively.  Kara Bruce, *Closing Consumer Bankruptcy's Enforcement Gap*, 69 BAYLOR L. REV. 479-82, 511-14 (2017).

Clearly there is no fundamental equitable principle that forbids one court from enforcing the injunction of another court because that exact scenario is contemplated by the federal rules and has been allowed by this Court.  For example, typically Rule 60(b) motions for relief from judgments, including injunctions, are brought before the same court that issued the judgment.  However, as the Advisory Committee Notes to Rule 60 provide, one acceptable procedure for seeking relief is "by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment."  Fed. R. Civ. P. 60(b), advisory committee note to 1946 amendment; *see also Smith v. New York*, No. 12-cv-4851, 2014 WL 6783194, *6 (E.D.N.Y. Dec. 2, 2014) (non-rendering judged interpreted and enforced stipulation ordered by rendering judge recognizing: "While this rationale may apply in cases where the rendering judge played a substantial role in

the settlement process, there is no indication here that the *Smith I* judge took any role in that process. Instead, it appears as though he simply rubberstamped the Stipulation."); *D'Addino v. Dulles*, 136 F. Supp. 417, 419 (E.D.N.Y. 1954) (action to enforce injunction issued by S.D.N.Y. concerning renunciation of citizenship brought and considered by court in E.D.N.Y). As another example, this Court recognized that one federal court can enforce an injunction entered into by another court where there are equitable reasons to do so. In *Smith v. Woosley*, 399 F.3d 428, 433-434 (2d Cir. 2005), this Court determined that although the language of 28 U.S.C. § 2283's relitigation exception appears to permit a court to protect only its own prior judgments, the "purpose" of the statute "appears to be better served by allowing a district court that has subject matter and personal jurisdiction to issue an injunction that protects the judgment of another federal court than by forcing the litigants to a likely inconvenient forum for an identical result."

Citi's assertion that a class action should be prohibited here is nothing short of an attack on the basic concept of the class action device and the merits of Rule 23 and its bankruptcy analogue, Fed. R. Bank. Pro. 7023. It is an attack that the bankruptcy court below strongly rejected:

> . . . it appears to me that Congress—both in enacting 105(a) and in making it clear in Bankruptcy Rule 7023 that the courts can preside over class actions—contemplated, in appropriate circumstances where the class would, of course, be certified, that one judge could preside over a class claim for breach of a discharge.

Clearly, in this context, that type of result procedurally is entirely consistent with Rule 23. It's the purpose of Rule 23. You have a multitude of debtors who have just emerged from bankruptcy, who if they had to do it on an individual basis would have to pay the reopening fee, retain a lawyer, et cetera, and pursue, as evidenced here, plaintiffs with—defendants with substantial resources and very capable counsel. That is unlikely to be done effectively in a context outside of a class action.

A270 at 9-23.

### 5. This Court's Decision in *Anderson* Does Not Support Citi's Position.

In *Anderson*, this Court has already spoken on some of the issues presented by this appeal. Yet, Citi consistently seeks to ignore and misstate two critical aspects of *Anderson:* One, that the bankruptcy court *writ large*, as opposed to an arbitration forum, has the unique power to enforce the discharge injunction. Two, that pursuing these claims as a nationwide class action is consistent with continuing the action in bankruptcy court. Defs.' Br. at 55-61, 64-66. In *Anderson*, this Court held that a contempt proceeding brought for violation of discharge orders and § 524 should not be arbitrated. *In re Anderson*, 884 F.3d at 391. In so holding, this Court expressly rejected appellants' argument that the case should be decided by a bankruptcy judge rather than an arbitrator. *See* Brief of Defendant-Appellant at *45, *Anderson v. Credit One Bank, N.A.*, 2016 WL6350502 (2d Cir. Oct. 26, 2016). When this Court held that it was critical that the bankruptcy court have the power to enforce its own order, it was not referencing the particular judge, but the court, *qua* court. After all,

the issue before the *Anderson* Court was whether there was an inherent conflict between arbitration and the Bankruptcy Code. When *Anderson* stated that "the bankruptcy court alone possesses the power and unique exercise to enforce [the discharge injunction]," *In re Anderson*, 884 F.3d at 390, this Court was referring to having § 524 violations decided by the bankruptcy courts, not arbitrators. This Court emphasized that "enforcement of the discharge injunction was a crucial pillar of the power of the *bankruptcy courts*," not an individual bankruptcy judge. *Id*. at 390-91. *See In re Ajasa*, 627 B.R. at 29 (*Anderson* "addresses these issues in the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district.")

Importantly, this Court also went out of its way to say that the fact that *Anderson* sought to bring a class action did not change the result. Twice, the *Anderson* Court specifically noted that the fact that the case was asserted as a nationwide class did not affect its reasoning. "The fact that Anderson's claim comes in the form of a putative class action does not undermine this conclusion." *In re Anderson*, 884 F.3d at 390. And "Finally, we observe that the class action nature of this case does not alter our analysis. . . . [because] where the putative class members are all allegedly victims of willful violations of the discharge injunction issued by the bankruptcy court there is a continuing disruption of the debtors' ability to obtain fresh starts." *Id*. at 391. Both of these statements were a clear rebuttal of the

argument that the class action nature of the case undermined the argument that the case should not be sent to an arbitration.

**6.     This Court Should Not Follow the Fifth Circuit's Dicta in *Crocker*.**

Citi relies heavily on the Fifth Circuit's decision in *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019), in which the Fifth Circuit had before it the question of whether a plaintiff who received a discharge in Virginia could bring a contempt proceeding in the Southern District of Texas, where he now lived, to enforce the discharge order and the injunction of § 524.  The court ruled that the plaintiff could not bring his case in the district where he now resides, even if his case were transferred under Bankruptcy Rule 4004(f).  Then, almost in passing, the court noted that its ruling would make a class action seeking to enforce discharges entered in other bankruptcy courts "highly dubious."  *Id*. at 217. Significantly, *Crocker* did not hold that the bankruptcy court did not have subject matter jurisdiction over a national class; rather, it held that the "usual enforcement rules" should bar the court from exercising such jurisdiction.  *Id*. at 216; *see also In re Anderson*, 641 B.R. at 17 (discussing *Crocker*).

This Court should not follow *Crocker* because the class action issue was not fully briefed before the court.  The subject of the appeal was whether an individual plaintiff could bring his case in Texas rather than Virginia.  *Crocker* also did not undertake any analysis of the purpose or role of § 7023 of the Bankruptcy Code

which expressly allows class actions, in fact, the court did not discuss class actions hardly at all in its opinion.

In denying the plaintiff before it the right to enforce his discharge order in his place of current residence, the court relied upon a change in the bankruptcy law in 1978 which omitted language in a section of the Bankruptcy Act that was the predecessor to Bankruptcy Rule 4004(f). That previous language specifically allowed an order of discharge to be registered in any other district and provided that such order "may be enforced in like manner as it would be enforced in the original district." *See Crocker*, 941 F.3d at 213. The court said that the omission of this language in the new Code showed a Congressional intent not to allow bankruptcy courts to enforce discharge orders from other districts. *Id.* The court cited no legislative history at all that indicated that such was the Congressional intent. *Id*. Moreover, the court's conclusion is completely illogical because Fed. R. Bankr. Pro. 4004(f) still provides that a discharge order may be registered in any other district and "[w]hen so registered the order of discharge shall have the same effect as an order of the court of the district where registered." In addition, the Advisory Committee Notes expressly state that registration is not even necessary "to enable a discharged debtor to obtain relief against a creditor *proceeding anywhere in the United States*, in disregard of the injunctive provisions of the order of discharge." (emphasis added). Fed. R. Bank. Pro. 4004(f) advisory committee's note. The effect

of *Crocker* is to invalidate Bankruptcy Rule 4004(f).  No other court has gone so far as to suggest that Rule 4004(f) is inconsistent with the Bankruptcy Code.

The *Crocker* court, like Citi, also relied heavily on this Court's language in *Anderson*, to the effect that this Court "has limited enforcement of discharge injunctions through contempt proceedings to the originating court." *Crocker*, 941 F.3d at 216.  As noted above, that is a total misreading of *Anderson*.

*Crocker* also relied on the Eleventh Circuit's holding in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012), which also did not involve a class of debtors seeking to enforce § 524.  In that case, owners of a cemetery that was faced with a state court class action in Florida for failure to keep proper records, brought a proceeding in Florida bankruptcy court to obtain a declaration that the Florida state court claims had been discharged in its Delaware bankruptcy.  The Eleventh Circuit held that the Florida bankruptcy court did not have jurisdiction and that the matter should be brought in Delaware.  The court had no occasion to examine the Congressional intent behind the specific grant of class actions in bankruptcy court and relied upon § 1334(c) to state that only one court could administer the "property of the estate." The court failed to distinguish between § 1334(c), dealing with property of the estate, and § 1334(b), which gives jurisdiction of "all civil proceedings arising under Title 11, or arising and/or related to cases under Title 11." *See Haynes*, 2014 WL 3608891 at \*7.  The *Alderwoods* court also stated that "it

would wreak havoc on the federal courts to leave enforcement of the injunction order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Alderwoods*, 682 F.3d at 970. As a general proposition, in cases where an injunction has been tailored to the facts of a particular case, that may be true, but that concern does not speak at all to the issue of whether a class action should be allowed under Bankruptcy Rule 7023 where all the members of the class allege the exact same violation of the statutory injunction of § 524 and violation of the same standard discharge order.

The *Crocker* decision is directly in tension with an earlier Fifth Circuit decision, *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748 (5th Cir. 2010). In that case, the lower court granted only a district-wide class because that is all the plaintiff sought. On appeal, the court held that the proposed class did not meet the conditions of Rule 23 but, nonetheless, strongly affirmed the power of the bankruptcy court to entertain a class action involving debtors who filed bankruptcy petitions before other judges. *Id.* at 754: "If bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules." Nonetheless, the *Crocker* court gave *Wilborn* short shrift because it held that the only issue that was before the court was a district-wide class rather than a national class, ignoring the underlying logic of the *Wilborn* decision. *Crocker*, 941 F.3d at 211.

Finally, the result in *Crocker*, as a policy matter, is unsupportable. In effect, the Fifth Circuit is saying that individuals who emerge from bankruptcy with limited means and who move to a new jurisdiction, such as one of the plaintiffs in *Crocker*, must return to the jurisdiction of discharge, and retain counsel in order to bring a proceeding to enjoin a discharge violation—*even if the violation occurs in the plaintiff's new place of residence.* Thus, even though *Crocker* held that the defendant in that case was improperly relying on § 523(a)(8) to collect on discharged student loans, it held that all those thousands of individuals had to bring their own individual actions to force that one defendant to cease its illegal conduct. And if any of the debtors has moved, they also were required to make a pilgrimage to the original bankruptcy court, even if it is thousands of miles away. That result is not only unconscionable, it is expressly contrary to Rule 4004(f) and its drafters' intent.[10]

---

[10] Neither *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002) nor *Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001) determine the outcome here. In *Cox*, the court merely held that a former debtor could not bring an action to rescind a reaffirmation agreement and to recover the amounts paid under the agreement. The court held that the only remedy available was a contempt proceeding in bankruptcy court. In the course of deciding that issue, the court, in an entirely different context, noted that it was more appropriate that a violation of § 524(c), which requires all reaffirmation agreements to be filed with the court, be decided by the court handling the bankruptcy proceeding, rather than the court hearing a private right of action. *Cox*, 239 F.3d at 916. Further, the court noted that plaintiff made the argument that the result required by the court would prevent nationwide class actions. The court, without ruling on that issue, noted that there were ample remedies under the

### 7.   This Court Should Not Follow the Dicta of the Court in *Belton*.

Citi asks this Court to rely on the self-acknowledged dicta of the *Belton* panel instead of the actual rulings of the *Anderson* panel when analyzing the issues currently before the Court.  This Court should not.  As in *Crocker*, the class action issue was not before the Court in *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612 (2d Cir. 2020) and was not briefed.  In *Belton*, this Court had before it only the "narrow issue" of whether a proceeding to hold defendants in contempt for violation of the discharge injunction of § 524 and of the discharge order needed to be sent to arbitration.  *In re Belton*, 961 F.3d at 614-15.  That issue was foursquare resolved by the *Anderson* panel.

---

bankruptcy court's contempt powers to deal with the issue. *Id.* at 917. Similarly, in *Walls*, the court held that there was no private right of action for violation of § 524, and that a debtor was limited to a contempt proceeding in the bankruptcy court. Like *Cox*, *Walls* did not engage in any discussion of the appropriateness of a national class action. In any event, the issue of whether there is a "private right of action" is, as the court notes in *In re Cano*, 410 B.R. at 537-38, a "red herring" because the bankruptcy court has ample power under § 105 to enforce bankruptcy court orders and to provide appropriate relief. "There is a distinct difference between asking the Court to create a private right of action out of a statutory provision based on conduct that allegedly violated that statutory provision, and asking the court to enforce a court order through a statutory provision that expressly authorizes courts to issue any orders or judgments necessary to enforce court orders and Code provisions, based on conduct that violated Code provisions incorporated by a court order." *In re Cano*, 410 B.R. at 537.

The *Belton* panel then ventured into the totally unbriefed issue of class action jurisdiction, even while twice admitting that the class action issue was not before the Court and stating that it would "leave for another day the issue of class certification." *Id*. at 618. The *Belton* panel's dicta should have no persuasive influence and certainly not the influential power that Citi demands it be given. The *Belton* panel had no occasion to analyze the fact that subject matter jurisdiction clearly exists; the Supreme Court's admonition that federal courts with such jurisdiction are required to exercise it; the inappropriateness of having hundreds of judges decide the exact same legal issues; and the weakness or irrelevance of the out-of-Circuit cases purporting to prohibit such jurisdiction. If the *Belton* Court had briefing on the issue, it would not have made the unsupported comment questioning whether a bankruptcy court has "jurisdiction to hold a creditor in contempt of another court's order." *Id*. at 617. As explained above, there is no question the bankruptcy court has such jurisdiction."

Moreover, the *Belton* dicta, which stated that "contempt proceedings involve considerations that the issuing court is uniquely positioned to assess," (*id*. at 617), did not consider the context in which this case arose. In the individual case, the court that issued the discharge may be in the best position to decide what remedy to apply for an individual discharge violation. But that does not *prohibit* a court from exercising class-wide jurisdiction where the defendant before the court has

committed exactly the same violation, in exactly the same way, in hundreds of thousands of bankruptcy cases. Clearly, any bankruptcy court can adjudicate the issue in this case: whether Citi's policy of refusing to correct tradelines for the purpose of coercing payment on discharged debts violates § 524 and the standard discharge order.

The *Belton* panel also did not consider at all the fact that contempt is not the only remedy the bankruptcy court can provide: it also has jurisdiction to award declaratory relief as to whether these identical loans have, in fact, been discharged, and to order restitution of funds illegally obtained. *Bessette*, 230 F.3d at 447 (recognizing power of the court to order disgorgement under § 105); *Golden v. JP Morgan Chase* (*In re Golden*), 596 B.R. 239, 259-60 (Bankr. E.D.N.Y. 2019) (recognizing declaratory judgment jurisdiction). The Complaint herein clearly seeks such relief. (A75-76, ¶ 89 and ¶¶ 1,5). And Citi has not challenged the appropriateness of such relief or argued that such relief cannot be rendered through a class action.[11] Citi gives no rational explanation why these same issues must be

---

[11] In deciding on the arbitration issue, the *Belton* panel noted that this "Court has never identified a private right of action under § 524," and therefore that "the Debtors have pursued this remedy through a contempt proceeding." *Belton*, 961 F.3d at 616. In making that statement, the panel cited *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91-92, 92 n.7 (2d Cir. 2016) and *Yghobi v. Robinson*, 145 F. App'x. 697, 699 (2d Cir. 2005). Neither of those cases, of course, holds that there is no private right of action. And clearly this action was not presented as plenary action in district court so as to invoke questions of private rights of action. Notably

decided in hundreds of individual cases, which the risk, or perhaps guarantee, of inconsistent judgments and resulting chaos.

Finally, the dicta in *Belton* stating that permitting a bankruptcy court to adjudicate compliance with another court's order "appears to be in severe tension with *Anderson*'s reasoning," (*Belton*, 961 F.3d at 617), is itself inconsistent with *Anderson*. As noted above, the *Anderson* Court found no such tension and expressly said so. ." If anything, the *Anderson* panel's reference to the continuation of class proceedings in bankruptcy court under the same circumstances presented here should be read as this Court's true persuasive authority on the issue.

Thus, the *Belton* dicta should not be followed here.

## 8. *Taggart* Does Not Prohibit Nationwide Jurisdiction In This Case.

Finally, Citi relies upon the Supreme Court's decision in *Taggart* to argue that the bankruptcy court lacks subject matter jurisdiction over a national class. *Taggart* did not speak to this issue at all, as Judge Stong held in *In re Ajasa*, 627 B.R. at 32: "[w]hile *Taggart* surely has a role to play in determining a creditor's liability, it

---

numerous proceedings and even class action have been pursued through adversary proceedings in Bankruptcy Court. But more importantly, neither case holds that § 105 of the Bankruptcy Code cannot be invoked by the bankruptcy court to provide declaratory, injunctive and restitutionary relief, separate and apart from holding a party in contempt. As the court notes in *In re Cano*, 410 B.R. at 537-38, the question of whether a party has a private right of action is really separate and distinct from (and not really relevant to) the more relevant question of whether a bankruptcy court can use § 105(a) to provide necessary relief for a discharge violation.

simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative national class." If *Taggart* has any application at all, it supports the exercise of jurisdiction in this case. As Judge Drain noted, insofar as *Taggart* applies an objective standard for contempt, applying that objective standard in a uniform way with regard to one defendant, counsels in favor of exercising nationwide jurisdiction: "when the same, systematic violation, for the same systematic reason, is alleged with respect to the breach of many identical, 'not detailed' discharge orders, a court's application of that objective standard would not necessarily undercut 'judicial process,' jurisdictionally or otherwise. It would instead fulfill Congress' desire to protect a crucial pillar 'central to the statutory scheme' 'and the bankruptcy system.'" *In re Anderson*, 641 B.R. at 18-19 (citing *In re Ajasa*, 627 B.R. at 28-29) (internal citations omitted.)

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff-Appellee Kimberly Bruce respectfully requests that the decision below be affirmed.

Dated: November 16, 2022       Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**


By: */s/ George F. Carpinello*
George F. Carpinello
Adam R. Shaw
Jenna C. Smith
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0600

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka
247 West 30th Street, Floor 12
New York, NY  10001
Tel: (212) 315-3755

*Attorneys for Plaintiff-Appellee Kimberly Bruce*

## **CERTIFICATE OF SERVICE**

I, George F. Carpinello, hereby certify that on November 16, 2022, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. I further certify that the above document was served on all parties by the Court's CM/ECF system.

*/s/ George F. Carpinello*
George F. Carpinello

55

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

1.  This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because it contains 13,811 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>/s/ George F. Carpinello</u>
George F. Carpinello